ACCEPTED
13-14-00508-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
4/6/2015 11:52:40 AM
DORIAN RAMIREZ
CLERK

CAUSE NO. 13-14-00508-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH JUDICIAL DISTRICT OF TEXAS
CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/6/2015 11:52:40 AM
DORIAN E. RAMIREZ
Clerk

## DAVID VASQUEZ
### Appellant

## V.

## THE STATE OF TEXAS
### Appellee

APPEAL FROM THE 117th JUDICIAL DISTRICT OF NUECES COUNTY, TEXAS, IN TRIAL CAUSE NO. 12-CR-2734-B

## APPELLANT'S BRIEF

**TRAVIS BERRY**

State Bar No. 24059194
P.O. Box 6333
Corpus Christi, Texas 78466
Telephone: (361) 673-5611
Facsimile:  (361) 442-2562
travisberrylaw@gmail.com

**ATTORNEY FOR APPELLANT**

**ORAL ARGUMENT IS NOT REQUESTED**

# IDENTITY OF INTERESTED PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1(a), Appellant lists the

following persons who have an interest in the appeal:

**JUDGE:**  Hon. Sandra Watts
117th District Court
901 Leopard
Corpus Christi, Texas 78401

| **PARTIES:** | **COUNSEL FOR APPELLANT:** |
|---|---|
| David Vasquez - Appellant | Kyle Hoelscher (Trial) |
| TDC: 1804598 | Texas Bar No. 24066508 |
| Torres Unit | 505 S Water St. - Ste. 525 |
| 125 Private Road 4303 | Corpus Christi, Texas 78401 |
| Hondo, Texas 78861 | Telephone:  (361) 434-0814 |
| | |
| | Travis Berry (Appeal) |
| | Texas Bar No. 24059194 |
| | P.O. Box 6333 |
| | Corpus Christi, TX 78466-6333 |
| | Telephone: (361) 673-5611 |
| | |
| The State of Texas - Appellee | **COUNSEL FOR THE STATE:** |
| | |
| Mark Skurka | Frank Errico (Trial) |
| Nueces County District Attorney | Assistant District Attorney |
| Texas Bar No.  18475570 | Texas Bar No. 06648950 |
| 901 Leopard - Rm. 206 | |
| Corpus Christi, Texas 78401 | |
| Telephone:  (361) 888-0410 | |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii.

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii.

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv.

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v.

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi.

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.    State's Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    Defense Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      C.    Closing Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      D.    Judgement and Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

STANDARD OF REVIEW AND APPLICABLE LAW . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      ISSUE:      Whether the evidence was sufficient to prove Appellant
                      used a knife in the commission of a robbery?

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# INDEX OF AUTHORITIES

**CASES**                                                          **PAGE**

*Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App.2010) . . . . . . . . . . . . . . . . . . . 12

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App.2007) . . . . . . . . . . . . . . . . . 12

*Collier v. State*, 999 S.W.2d 779 (Tex. Crim. App. 1999) . . . . . . . . . . . 11, 14, 18

*Jackson v. Virginia,* 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lockett v. State*, 874 S.W.2d 810 (Tex.App.-Dallas 1994, pet. ref'd) . . . . . . . . 15

*McCain v. State*, 22 S.W.3d 497 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . 15

*Moff v State* (April 7, 2004, CCA No. 1343-03) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Morales v. State*, 633 S.W.2d 866 (Tex. Crim. App. 1982) . . . . . . . . . . . . . . . . 16

*Tucker v. State*, 274 S.W.3d 688 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Williams v. State*, 235 S.W.3d 742 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . 13

**STATUTES AND RULES**                                        **PAGE**

Texas Penal Code §29.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

Texas Penal Code §29.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 14

**TO THIS HONORABLE COURT OF APPEALS:**

**STATEMENT OF THE CASE**

Appellant, David Vasquez, was accused by indictment on August 17, 2012, of Aggravated Robbery under Texas Penal Code §29.03, a first degree felony. (CR 6)

On February 26, 2013, Appellant's case was tried to a jury and he was found guilty. On February 27, 2013, Appellant was sentenced by the trial court to twenty five (25) years in the Institutional Division of the Texas Department of Criminal Justice. (CR 123, 188)

## ISSUES PRESENTED

Whether the evidence was sufficient to prove Appellant used a knife in the commission of a robbery?

**STATEMENT OF FACTS**

On August 17, 2012, Appellant, David Vasquez, was charged by indictment of first degree aggravated robbery, in violation of Penal Code §29.03, alleged to have occurred on November 9, 2011. (CR 6) The State alleged that Appellant robbed victim Peggy Root with a deadly weapon as she left work at Fajitaville Restaurant located on North Beach in Corpus Christi, Texas. Appellant pled not guilty to the aggravated robbery charge and the case was tried to a jury. (RR3 - 20)[1]

The State began by describing its version of the facts of this case, that the victim was accosted by appellant wielding a knife in the parking lot around 9:00 p.m.. A fight ensued between victim and appellant wherein victim gained control over the knife, but was then beaten by appellant and lost control of the knife. After appellant attempted but failed to get the victim into her vehicle, appellant left the scene in the victim's vehicle. (RR3 - 22-24) The victim was able to return to the restaurant where she works and seek help from co-workers. (RR3 - 24)

At the scene the night of the attack, the victim described him to the police as being nearly six (6) feet tall and nearly 200 pounds. The following day, the victim

---

[1] Volume 3 (RR3) of the reporter's record contains all trial proceedings and Volume 4 (RR4) contains all sentencing proceedings.

described her attacker as being five foot three inches tall and around 150 pounds. (RR3 - 25, 95) The State closed its opening argument by stating that blood found inside the vehicle was a match to appellant and that the victim picked appellant out of a formal police line-up. (RR3 - 25, 26) The defense reserved its opening statement until after the close of the State's case. (RR3 - 27)

### A.     State's Evidence

### 1.     Non-Victim Testimony

Officer Macias of the Corpus Christi Police Department (hereafter C.C.P.D.) testified that he arrived on the scene to assist as Officer Revis attended to the victim inside the restaurant.  Officer Macias took photos (State's exhibits 1 - 8)[2] of the scene which depicted blood stains around the area of the alleged attack. (RR3 - 30-35) Next Rose Mary Blanton, a C.C.P.D. crime scene investigator, testified that she took the photos of the victim's injuries depicted in State's exhibits 9 through 35. (RR3 - 37, 38)

Officer Revis testified about taking statements from the victim who was very disoriented the night of her attack which explains her differing descriptions of her attacker. (RR3 - 95) Crime Scene technician Diego Rivera testified that he

---

[2] All exhibits were requested by Appellant and ordered by the trial court to be a part of the appellate record. Volume Five of the reporter's record lists these exhibits, but the Nueces County District Clerk's office was unable to find these photo exhibits for inclusion in the record.

took the photos of the victim's vehicle after it was pulled from the water (State's exhibits 38 - 58) (RR3 - 100 - 107).

C.C.P.D. investigator Gayle Morgan, Nueces County District Attorney investigators Craig Hill and Gary Witherspoon, nurse Warren Walker, and Texas Department of Public Safety lab technician Lisa Baylor, all testified as to the taking of the blood evidence and the chain of custody of the blood evidence. Their testimony on the blood evidence and its proper chain of custody was admitted by the trial court without objection. (RR3 - 111 - 133)

### 2. Victim Testimony

Peggy Root was the victim in this case and testified against Appellant. Ms. Root testified that as she walked toward her vehicle upon leaving work, she was approached from behind by someone. Ms. Root believed it to be a co-worker playing a trick on her only to discover that it was a stranger. Ms. Root testified that the strange man held a knife to her and said, "Get in the car, bitch, or I'll kill you." Ms. Root realized that this was a real situation and replied, "Okay, I'll do whatever you want, just don't hurt me." (RR3 - 52, 53)

Ms. Root testified that she was in actual fear of her life at this point and told Appellant, "I have money on the floor and you can have the car and you can have everything. My phone is in there. You can have everything, just leave me alone,

3

just let me go." This plea by Ms. Root failed and she testified that Appellant continued to force her into the vehicle. Ms. Root continued and stated that Appellant said, "Find those fucking keys, bitch. Find those fucking keys. I'm not kidding. I'm not kidding, I will kill you, if you don't find those keys." (RR3 - 53, 54)

Next Ms. Root testified that, as Appellant was forcing her into her vehicle, she noticed a knife in his left hand as he grabbed the steering wheel. (RR3 - 55, lines 5-16 ) Ms. Root described grabbing the knife:

State:      Maybe if you show the jury how you grabbed the knife.

Ms. Root:   Oh, okay. Yeah, I grabbed it like this.

State:      With both hands?

Ms. Root:   Yes, but primarily with my right hand.

State:      Okay.

Ms. Root:   And --

State:      You grabbed the blade?

Ms. Root:   Yes, sir.

State:      Okay. And then what happened?

Ms. Root:   Then what happened was at the same time I grabbed the -- not at the same time, but I grabbed the blade in my hand and we were struggling for it. And I opened the passenger's side door,

4

and that's about the time when we both tumbled out of the car. (RR3 - 57)

Ms. Root testified that after they tumbled out of the vehicle, she landed on her stomach with Appellant straddling her back. Ms. Root stated that she then was laying upon the open knife blade and was able to get the knife folded up. (RR3 - 58) After sustaining multiple blows to the head from Appellant's fists, Ms. Root stated Appellant hit her with her own boots from inside her vehicle. (RR3 - 61) Ms. Root then testified that Appellant regained control of the knife and tried to open the blade but it had jammed shut. (RR3 - 62)

Appellant again attempted to get Ms. Root inside the vehicle but she made herself go limp into dead-weight. Appellant could not get Ms. Root's legs into the vehicle and decided to flee the scene by stealing her vehicle. (RR3 - 62, 63) Ms. Root testified that she had a cut on her right pinky finger from grabbing the knife as depicted in State's exhibit 19, a photograph taken at the hospital.

On cross examination, Ms. Root testified that she gained control of the knife after tumbling out of the vehicle with Appellant, laid upon the knife, and closed the blade. (RR3 75 - 77) Appellant then smashed her head into the vehicle breaking her nose and then fled the scene in the vehicle. (RR3 - 78, 79) The defense concluded its cross examination by asking Ms. Root about the disparities

5

between her description of the event that evening and her description the following day. (RR3  79 - 84)

## B.     Defense Evidence

The defense opened by arguing that Appellant would tell his side of the story about robbing the victim and show that the knife was not "part of the story". (RR3 - 135) Appellant testified in his own defense, that he was with a work crew doing construction work in Corpus Christi, Texas. Appellant admitted to using drugs and alcohol before approaching Ms. Root in the parking lot to ask for a cigarrette. (RR3 - 138)  Appellant stated that he "startled" Ms. Root and she grabbed his sweater and bit his finger. (RR3 - 141) Appellant testified that he defended himself, trying to push her face away from him when he was bitten. Appellant tried to get away from Ms. Root but could not because she had his finger and testified as such:

Appellant:   Well, I was begging, like, "Please let go. Please let go." But as soon as I felt her going harder and deeper, I started hitting her to let go, to see if she would let go. And I did hit her, yes, sir, I did.

Defense:     How hard did you hit her?

Appellant:   I mean, I'm a construction worker, I hit her pretty hard.

Defense:     Okay. How many times did you hit her?

6

Appellant: At that time, I believe like four or five times at that time.

Defense: Okay. And do you recall where you hit her at?

Appellant: In her face. It was in her face.

Defense: Okay. And which hand were you hitting her with, your right or your left?

Appellant: My left, because she had my right -- my right finger in her mouth, and I was hitting her with my left. (RR3 - 142)

Appellant was able to remove his finger after enough punches and described a situation of a mutual fight between himself and Ms. Root. Appellant stated he was bleeding and scraped up, and when Ms. Root started hitting him with her boot, he defended himself by biting her on her shoulder. (RR3 - 143) The defense then entered its exhibits 1 though 10 of photographs of Appellant's hand where it was bitten. (RR3 144 - 150)

Appellant concluded his direct testimony by admitting he stole Ms. Root's vehicle once he got his hand free and that he accidently drove off into the ship channel because he had no clue where he was and was on drugs. (RR3 - 151) Appellant admitted to his prior trips to T.D.C.J. and hitting Ms. Root in the face, but that at no time during the event did he have a knife. (RR3 - 152, 153)

The State focused its cross examination on the Appellant's admission of

hitting Ms. Root. Appellant testified that he did hit her numerous times but that he did not slam her head into the vehicle and did not use a boot as a weapon. He agreed that Ms. Root was not "making it all up", admitted to hitting her, but that she certainly exaggerated her story. (RR3 - 156, 161) Appellant testified that he only asked Ms. Root for a cigarrete and did not hold a knife to her and tell her "get in the car bitch." (RR3 - 156, 157)

The State inquired on whether the jury should believe a convicted felon's side of the story over Ms. Roots'. Appellant again testified that he did assault Ms. Root but that there was never a weapon involved. (RR3 - 163, 175)

### C. Closing Arguments

The State made a brief opening argument that it was up to the jury to determine whether a knife was used or not. (RR3 - 181) The defense admitted to the robbery up front and asked the jury to "follow the law and search for reasonable doubt as to one single issue." (RR3 - 182)

The defense showed that no knife was ever recovered and that the medical evidence was not consistent with Ms. Root's injuries. (RR3 - 182) The defense told the jury that Ms. Root was not a liar but argued that she was exaggerated parts of her story as shown in her inconsistancies in different police reports. (RR3 - 183, 186)

The defense closed by asking the jury to only find Appellant guilty of simple robbery:

> "you can't let your distaste for who Mr. Vasquez is, what he's done, his past, these actions, convict him of something which he did not do. What he did was he robbed Peggy Root. What he did not do is aggravatedly (sic) rob Peggy Root."  (RR3 - 187)

The State closed by arguing that Ms. Root is simply more credible than Appellant and that Appellant is a convicted felon who knew what he was doing who has an incentive to lie.  (RR3 187 - 189) The State argued that the medical evidence of Ms. Root's hands was consistent with defending against a knife which was proof that a knife was used. (RR3 - 190) The State closed by arguing that no knife was recovered because Appellant got rid of the knife and asked the jury to find him guilty of aggravated robbery. (RR3 - 192)

### D.    Judgement and Sentence

After the jury found Appellant guilty of aggravated robbery (RR3 - 193, CR 123), the trial court heard from both Ms. Root and Appellant. Ms. Root asked the trial court to "put him away for a long time, for life if possible" (RR4 - 7, 8) Appellant stated that he wants help for his drug addiction and testified that he grew up in a very rough part of San Antonio, Texas, where he began shooting up heroin at thirteen (13) years old. (RR4 - 9, 10) Appellant chronicled both his

9

criminal and extensive drug abuse history. (RR4 10 - 16)

The defense asked the trial court impose a twenty (20) year punishment on Appellant for this "3(g)" offense which would ensure a considerable sentence so that Appellant could fully work the T.D.C.J. rehabilitation programs. (RR4 - 20) The State called Appellant a "sociopath" and argued that the facts of this case suggest that this "could have been a capital murder." (RR4 - 21, 22) The State closed by asking the trial court impose a life sentence. (RR4 - 23, 24)

The trial court found the Appellant guilty of first degree aggravated robbery and assessed a sentence of twenty five (25) years in the Institutional Division of the Texas Department of Criminal Justice. (RR4 - 28, CR 123) It is from this conviction and sentence Appellant appeals.

## SUMMARY OF THE ARGUMENT

Appellant concedes (as he did at trial) to the sufficiency of the evidence to support his conviction for the lesser-included offense of robbery. Appellant testified truthfully about the robbery and admitted to heinous acts upon the victim. Appellant also testified truthfully that he did not do those acts using a knife. Lack of certain physical evidence supports Appellant's testimony that he did not exhibit or use a knife in this robbery.

Appellant is asking this Court to reform his conviction to the lesser-included offense of robbery. See *Collier v. State*, 999 S.W.2d 779 (Tex. Crim. App. 1999).

**APPLICABLE LAW & STANDARD OF REVIEW**

Texas Penal Code § 29.02 - Robbery: (a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Texas Penal Code §29.03 - Aggravated Robbery: (a) A person commits an offense if he commits robbery as defined in Section 29.02, and he: (1) causes serious bodily injury to another; (2) uses or exhibits a deadly weapon;

The *Jackson v. Virginia*[3] legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App.2010)

When reviewing sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks* at 898-900 (plurality opinion). We defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. See *Jackson* at 319, *Clayton v. State*, 235 S.W.3d 772

---

[3] 443 U.S. 307 (1979)

(Tex. Crim. App.2007). Our duty as a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App.2007).

A defendant need not file a motion for directed verdict or a motion for new trial to preserve an appellate claim concerning the sufficiency of the evidence to prove his guilt. He need not object to the admission of evidence in the trial court to preserve this issue. He need not claim, in the trial court, that the method by which the State proved an element of the offense was deficient or defective. In short, a claim regarding sufficiency of the evidence need not be preserved for appellate review at the trial level, and it is not forfeited by the failure to do so. *Moff v State* (April 7, 2004, CCA No. 1343-03)

# ARGUMENT

ISSUE RESTATED:      Whether the evidence was sufficient to prove Appellant used a knife in the commission of a robbery?

Although §29.03 proscribes a finding of aggravation where a weapon was not used but a "serious bodily injury" resulted, the jury charge failed to instruct as such. The jury charge limited any finding of aggravation solely to the use of a knife: "The offense is aggravated robbery if the person committing the robbery uses or exhibits a deadly weapon." (CR 114) Thus the jury can only have found the robbery to have been aggravated based upon the presence and use of a knife during commission of the robbery.

Appellant concedes the legal sufficiency of the evidence to support his conviction for the lesser-included offense of robbery, he is asking this Court to consider reforming his conviction to the lesser-included offense of robbery. See *Collier v. State*, 999 S.W.2d 779 (Tex. Crim. App. 1999).

Appellant argues that Ms. Root's testimony alone is not enough evidence upon which to support a verdict for aggravated robbery. While Ms. Root's testimony was that Appellant brandished a knife upon his approach before the struggle ensued, it does not supply the evidence that Appellant actually had or used a knife in the robbery.

14

Ms. Root was inconsistent in her description of her assailant to police. Although that can be understandable after such a unnerving event, it goes to the issue of her memory. Was Ms. Root's memory on the details of the person who attacked her clouded on this issue of a knife too? This cannot be answered, only the evidence can be reviewed.

There was no testimony about the sharpness of the folding knife that appellant carried, the actual knife was not in evidence, and no testimony was presented by the victim or police that the folding knife had the ability to inflict death or serious injury.

When a person is charged with using a deadly weapon, the evidence must establish that the weapon was actually deadly. *Lockett v. State*, 874 S.W.2d 810, 814 (Tex.App.-Dallas 1994, pet. ref'd). Under the offense of aggravated robbery with which appellant was charged, a person commits an offense if he commits a robbery and "uses or exhibits a deadly weapon during the commission of the robbery." (CR 6, 114). A folding knife is not a deadly weapon by design. See *McCain v. State*, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000)[4]

---

[4] "an object that has an obvious purpose apart from causing death or serious bodily injury cannot be a deadly weapon"

Even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used. *Tucker v. State*, 274 S.W.3d 688 (2008); Also See *Morales v. State*, 633 S.W.2d 866, 868-69 (Tex. Crim. App. 1982) (photograph of deep slash from just underneath the victim's earlobe across her cheek to the corner of her mouth, closed by sutures, was sufficient to show that a deadly weapon was used).

Conversely, those same injuries can be shown to exhibit a lack of injury from a knife. Ms. Root testified that she actually grabbed the knife by its blade with her right hand (RR3 - 57) and then fell onto the knife while its blade was open. (RR3 - 58) But later Ms. Root testified that she did not have any serious injuries from the alleged knife:

State: Now, you said you grabbed the knife. I'm going to show you State's Exhibits 8 and 9; do you have wounds to your hands because of that?

Ms. Root: Yes, sir.

State: I think you said you grabbed it with your right hand?

Ms. Root: Yes, sir.

State: Those are wounds to your right hand?

Ms. Root: I have scratch -- not a scratch, but a cut on my pinky because

16

that's where -- because of how I grabbed it.

State:      I think you said you grabbed it predominantly with one hand?

Ms. Root:   Yes, sir.


Ms. Root's testimony regarding her hand injuries and pictures of the injuries themselves is inconsistent with the violent struggle she described. There were four pictures taken of Mr. Root's hands after the attack. The first picture (RR5 - 21) shows what appears to be two scratches or small cuts to the palm. The second picture (RR5 - 23) shows what appears to be a small cut to the left pinky finger. The third picture (RR5 - 25) shows what appeals to be small abrasions to the knuckles. The fourth picture (RR5 - 27) shows what appears to be a scratch to the back of the hand.

These injuries could easily come from Ms. Root's struggle with Appellant while on the gravel and concrete parking lot. Fighting over a knife blade, actually handling the blade itself, while in this back-and-forth physical exchange with Appellant should have produced more serious injuries than what is seen in the photographs. Further, there were no injuries to Ms. Root's stomach or abdomen to support her claim that she fell onto a knife blade.

Appellant testified that he did not have a knife when he committed this

robbery and argues on appeal that the physical evidence does not support Ms. Root's testimony on the alleged knife's existence.

## CONCLUSION

Lack of certain physical evidence supports Appellant's testimony that he did not exhibit or use a knife in this robbery. Appellant is asking this Court to reform his conviction to the lesser-included offense of robbery. See *Collier v. State*, 999 S.W.2d 779 (Tex. Crim. App. 1999).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays this Honorable Court reverse Appellant's conviction for aggravated robbery and reform the conviction to a robbery, remand the case to the trial court for re-sentencing, and to grant any other such relief to which Appellant may be entitled.

Respectfully submitted,

/s/ *Travis Berry*
Travis Berry
Texas Bar No. 24059194
P.O. Box 6333
Corpus Christi, Texas 78466
T: (361) 673-5611; F: (361) 442-2562
travisberrylaw@gmail.com
ATTORNEY FOR APPELLANT

18

**CERTIFICATE OF SERVICE**

This is to certify that on this April 6, 2015, a true and correct copy of the Appellant's Brief has been sent via e-mail to Mark Skurka, attorney for the State, at the Nueces County District Attorney's Office, 901 Leopard - Rm. 206, Corpus Christi, Texas 78401.

/s/ *Travis Berry*
Travis Berry

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the undersigned certifies this brief complies with the type-volume limitations announced in Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure.

1. The undersigned certifies that the Initial Brief contains no more than **3,658** words in proportionately spaced typeface, an amount of words within the limits set forth in Rule 9.4(i)(2)(B)

2. The brief has been prepared in proportionately spaced typeface using WordPerfect 12 in 14 pt. Times New Roman. Footnotes have been used and are all accounted for in the above word count.

3. The undersigned acknowledges a material misrepresentation in completing this certificate, or circumvention of the type-volume limits states in Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure, may result in the Court striking the brief.

/s/ *Travis Berry*
Travis Berry